## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL ANTHONY, individually, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>          v.<br><br>THE FEDERAL SAVINGS BANK, an Illinois Federal Savings Association, and NATIONAL BANCORP HOLDINGS, INC., a Delaware corporation,<br><br>          Defendants. | Case No.: 1:21-cv-02509<br><br>Honorable Edmond E. Chang |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant Michael Anthony ("Plaintiff") hereby moves to dismiss Defendant/Counter-Claimants The Federal Savings Bank ("FSB") and National Bancorp Holdings, Inc.'s (NBH, collectively "Defendants") Counterclaim (Dkt. 15), and in support states as follows:

### I.   INTRODUCTION

The Court should dismiss Defendants' Counterclaim for common law fraud pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because Defendants lack standing, the allegations of fraud lack specificity, and the allegations of reliance, causation, and damages fail as a matter of law.

Plaintiff's lawsuit arises out of at least six unsolicited telemarketing calls to Plaintiff's phone number to sell Defendants' mortgage loan refinancing services, despite Plaintiff's long-standing registration on the Federal Do Not Call Registry ("DNC").

Plaintiff was called by a third party identified only as "FDE," on Defendants' behalf. FDE then transferred the call with Plaintiff to Defendants' employee. Regarding consent, Defendants

do not dispute Plaintiff is registered on the DNC. Instead, Defendants rely on a purported inquiry from a third-party website called lowermyowninterestrate.com. But the record should never have been relied on because it does not pass inspection even upon first glance. Defendants apparently outsourced to FDE complete discretion to determine whether a recipient had consented and then accepted live call transfers for mortgage solicitation by FSB without performing any of their own quality control into FDE's calling prior to receiving the call. Further, Defendants fail to include relevant allegations to explain how any purported permission was transferred from lowermyowninterestrate.com to Defendants.

In addition, Defendants take issue with Plaintiff feigning interest in Defendants' services, but Defendants' theory of harm is a non-sequitur. Defendants try to manufacture consent obtained *after* the unsolicited call was placed and Plaintiff's claim had already accrued. But Plaintiff was diligent in explaining the truth that his interest was in being disassociated with the name "Needle Dee." Plaintiff explains that he did so to identify the anonymous caller. Immediately after obtaining FSB's identity, Plaintiff repeatedly told the salesperson and manager at FSB that he was never supposed to have been contacted. Courts have consistently rejected arguments that attempt to portray this behavior as bad faith.

Accordingly, on July 8, 2021, Plaintiff served a Notice of Safe Harbor under Rule 11 and a copy of the Motion for Sanctions, and plans to follow up with filing the Motion for Sanctions on July 30, 2021, or as soon as the Safe Harbor period expires.

## II.   PROCEDURAL BACKGROUND

On May 10, 2021, Plaintiff filed his complaint against Defendants, asserting that they violated the Telephone Consumer Protection Act ("TCPA") by calling him without his consent to his phone number that was registered on the National Do Not Call Registry ("DNC Registry").

Complaint, Dkt. 1. Plaintiff alleges at least six violations of 47 U.S.C. § 227(c) (the Do Not Call provision of the TCPA) in April 2021. Compl. ¶ 45.

On July 2, 2021, Defendants filed an answer and FSB only asserted a counterclaim[1] for common law fraud, alleging that Plaintiff requested the call either by submitting his phone number into a third-party website form requesting mortgage rates or by his actions during a phone call with Defendants to identify the caller. Dkt. 15.

## I. FACTUAL BACKGROUND

Plaintiff closely guards his privacy and has had his phone number registered on the DNC Registry for the past 17 years. Compl. ¶ 27. Plaintiff never consented to any calls and had no prior relationship with Defendants. Compl. ¶ 46. Plaintiff registered his residential phone number ending in x555 on the DNC Registry on May 20, 2004. Compl. ¶ 29. For two years, despite never using such a moniker, Plaintiff has been receiving calls to speak to an obviously made-up "person" named "Needle Dee." Compl. ¶ 30. For this period, Plaintiff has been trying to identify how he was put on a list under the name Needle Dee so he could get his phone number removed from any association with "Needle Dee." Compl. ¶¶ 30–31.

On April 14, 2021, Plaintiff received a phone call asking for Needle Dee. To investigate the source of the unsolicited calls, Plaintiff played along. Compl. ¶¶ 35–37. Plaintiff was connected with a person named Moe and was eventually sent an email from an address @thefederalsavingsbank.com. Compl. ¶ 39. Immediately after determining the identity of FSB, Plaintiff called back and informed Moe, and Moe's manager Matt, that he did not consent to be

---

[1] Although the counterclaim is asserted only by FSB, given the possible ambiguity in the preamble of Defendants' Answer, Affirmative Defenses and Counterclaim (Dkt. 15), Plaintiff refers to both Defendants in this motion to dismiss.

called and that he was on the DNC Registry. Compl. ¶¶ 40–43. Despite speaking to two FSB

employees that day, he received more unsolicited phone calls the next day. Compl. ¶ 44.

## II.      LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the

sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d

732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts all well

pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). To survive a motion to dismiss, plaintiff

must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). A complaint is facially plausible when plaintiff alleges "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v.*

*Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In order to

survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter

jurisdiction. *Ctr. For Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th

Cir. 2014).

## III.     THE COUNTERCLAIM SHOULD BE DISMISSED

The counterclaim should be dismissed for lack of subject matter jurisdiction and/or failure

to state a claim.

### A.      Defendants Lack Standing

Defendants have not alleged any injuries that were caused by Plaintiff. Defendants

therefore lack standing to bring a fraud claim. In order to sue in federal court, a [counter-claimant]

must meet the constitutional requirements for standing: (1) the party must have personally

suffered an actual or threatened injury caused by the defendant's illegal conduct; (2) the injury must be fairly traceable to the challenged conduct; and (3) the injury must be one that is likely to be redressed by a favorable decision. *United Transp. Union v. Surface Transp. Bd.*, 183 F.3d 606, 611 n.2 (7th Cir. 1999).

Defendants cannot show that any injuries are traceable to Plaintiff's purported representations. The phone call in which Plaintiff feigned interest occurred after the call was placed and TCPA liability arose. The representations made during the call could not have caused Defendants to have placed the call in the first place.

Defendants' claimed reliance on the web form does not explain the calls that Defendants placed to Plaintiff after Plaintiff told Defendants to stop calling. Defendants called him four more times after Plaintiff spoke to an employee and a manager of Defendants to reiterate that he never should have been called in the first place. Compl. ¶ 43. Defendants cannot establish that they ever obtained Plaintiff's consent to be called. Furthermore, Defendants cannot place reliance on a web form submitted in the name of Needle Dee or representations during a phone call for the four calls made to Plaintiff after he verbally reiterated that he never gave consent and was on the DNC Registry to more than one employee of Defendants.

In addition, litigation costs, such as those claimed as damages by Defendants, do not establish standing. *See Chow v. Aegis Mortg. Corp.*, 185 F. Supp. 2d 914, 917 (N.D. Ill. 2002) ("What is utterly crystal clear, as repeatedly and recently reaffirmed by the United States Supreme Court, is that attorneys' fees and litigation costs by themselves do not provide a basis to sustain federal jurisdiction."). Defendants lack standing to seek attorneys' fees and costs incurred as a result of the dispute that is the subject of Plaintiff's lawsuit.

### B. Plaintiff's Investigation to Identify His Unsolicited Callers Was Not Fraudulent

Courts across the country have consistently explained that it is to be expected, and not in bad faith, that the target of unsolicited telephone calls in some way engage with the caller to discover and pursue the identity of the responsible party. *See Johansen v. GVN Mich., Inc.*, 1:15-cv-00912, 2015 U.S. Dist. LEXIS 79776, at *3-4, 2015 WL 3823036 (N.D. Ill. June 18, 2015) (Posner, J., sitting by designation). ("[T]he defendant argues that by pressing 1 the plaintiff consented to receive future Robocalls from the defendant. The plaintiff, however, alleges that he pressed 1 only to find out who was calling (and there is no evidence to the contrary) . . . . If [the plaintiff] didn't know who was calling, he wouldn't know whom to sue. His seeking the caller's identity was not tantamount to consenting to receive telephone solicitations."); *Shelton v. Nat'l Gas & Elec., LLC*, Civ. A. No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *12, 16, 2019 WL 1506378 (E.D. Pa. April 5, 2019) ("The fact that he 'play[s] along' with telemarketing scripts to 'find out who [they] really are' is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation....Plaintiff's only intentional engagement with Defendant was calling it back to "find out who [it] really [was]," which is a prerequisite to filing a lawsuit. At this stage, there is no evidence that Plaintiff is doing anything other than "pursu[ing] his rights."); *Morris v. V4V1 Vehicles for Veterans*, No. 4:15-CV-724, 2017 U.S. Dist. LEXIS 111096, at *7, 2017 WL 3034664 (E.D. Tex. July 18, 2017) ("While it is true that Plaintiff informed 'Donate That Car' that he desired to donate a vehicle, Plaintiff alleged he made such false representation to find out who was responsible for making the numerous calls to his telephone number[. This is] an insufficient basis for concluding that Plaintiff acted in bad faith."); *Sapan v. Sunrise Mgmt.*, 2016 U.S. Dist. LEXIS 56879 (C.D. Cal., Apr. 25, 2016) (granting default

judgment) ("Sapan 'feigned interest in order to find out who was calling him' and was transferred to a 'Todd Stevens' of 'Sunrise Law Group.'").

### C.     The Fraud Claim Fails For Lack of Specificity

A party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). "A plaintiff [or counter-claimant] who bases allegations of fraud on information and belief bears the burden of pleading plausible grounds for suspecting that the defendant [or counter-defendant] was engaged in a fraudulent scheme." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (emphasis added). Furthermore, a "plaintiff [or counter-claimant] pleading fraud on information and belief has to show that the missing pieces are outside of its control." *Id.* at 444.

Defendants do not state with particularity any facts supporting their suspicions that "upon information and belief, Plaintiff visited the website www.lowermyowninterestrate.com on January 10, 2021" (the "who"), or what was allegedly said that conveyed an "interest in being contacted about refinancing a mortgage" (the "what"). Counterclaim ¶¶ 3, 12. According to Defendants, their vendor—an entity identified only as "FDE"—not Plaintiff, conveyed the information to Defendants that Defendants claim to be false. Counterclaim ¶ 15. FDE could have obtained the information from anywhere, and Defendants do not provide a reasonable basis for alleging that it was Plaintiff who submitted the information into the website or explain how the information from the website was transmitted to FDE. *See* Counterclaim ¶ 6 ("As a result of submitting this information and providing express written consent to be called, FDE called the number provided"). Defendants allege only on "information and belief" that Plaintiff visited a website (Counterclaim ¶ 3), and that "Plaintiff's phone number, an email address, the name 'Needle Dee,' the address of a home in Lansdale, Pennsylvania, and information about the mortgage on that home" was entered

into the website. Counterclaim ¶ 4. That information could have been entered by anybody. Furthermore, Defendants have not pointed out what missing pieces beyond its control require Defendants to allege on information and belief that it was Plaintiff who made the alleged representations, where FDE or other business partners should have all the information Defendants need to accurately identify the source of the information.

In addition, Defendants claim in conclusory fashion that the website, www.lowermyowninterestrate.com, has "clear and unambiguous language" that submitting the form is tantamount to consenting to be called, but Defendants omit the exact language they supposedly rely upon to adopt that construction (the "what"). *Id*. Counterclaim ¶ 5. Without these, the claim fails under Rule 9(b).

### D.       The Fraud Claim Fails for Lack of Reliance

Also fatal to Defendants' counterclaim is that Defendants do not plead reliance or causation. *See Beck v. Cantor, Fitzgerald & Co*., 621 F. Supp. 1547, 1555 (N.D. Ill. 1985). Defendants do not allege that they directly relied on the fraud, but rather that it was a "foreseeable target." Counterclaim ¶ 16. Defendants' reliance on FDE, however, was not foreseeable by anyone inputting the data into the website. Unlike in *Rozny v. Marnul*, where the court concluded that a surveyor who "kn[ew] that its plat would be used and relied on by others" could be held liable for its misstatements, no facts are alleged to suggest any computer user could have anticipated that Defendants would rely on the information allegedly input into the web form. *See* 43 Ill.2d 54, 67 (1969). Defendants do not argue that Plaintiff caused Defendants to change their behavior. *See Doctor's Data, Inc. v. Barrett*, 10 C 03795, 2011 U.S. Dist. LEXIS 134921, 2011 WL 5903508, at *37 (N.D. Ill. Nov. 22, 2011) ("[A] common law fraud claim requires actual reliance which means that the misrepresentations must reach the plaintiff who must reasonably rely on them… In

this case, Doctor's Data alleges no reliance of their own and their fraud claim must be dismissed.")
(citation omitted).

Further, any reliance by Defendants and FDE would have been unreasonable. Defendants were reckless to put unquestioning trust in FDE to determine that a person named "Needle Dee" had consented to be called and could possibly satisfy the requirements for mortgage refinancing.[2] Yet, Defendants blindly accepted call transfers from FDE and exposed themselves to TCPA liability. Any reasonably prudent person would notice that was a fake name, or at least suspect as much and investigate further. Defendants had no such quality filters in place before accepting call transfers from FDE when they should have. *See DaimlerChrysler Servs. N. Am., LLC v. N. Chi. Mktg.*, No. 02 C 5633, 2003 U.S. Dist. LEXIS 25147, at *8-9 (N.D. Ill. Feb. 7, 2003) (dismissing fraud claim because plaintiff fails to show reasonable reliance as a matter of law when simply reading the documents would reveal the supposed fraud).

**E.      The Fraud Claim Fails for Lack of Damages**

Defendants admit that Plaintiff informed Defendants on April 14, 2021, that he was not Needle Dee and that his number was on the DNC Registry. Dkt. 15 (admitting allegations in Compl. ¶ 41). But the calls continued, even after Plaintiff told two employees of FSB to stop calling and that he never consented to be called. Compl. ¶ 44. Defendants' fraud claim cannot be premised on the calls placed to Plaintiff after Plaintiff informed Defendants he was not Needle Dee. Because this lawsuit is independently actionable for these subsequent calls and Defendants' only claimed injuries are unrecoverable attorneys' fees and costs arising out this dispute, Defendants have failed to allege that any purported fraud caused Defendants' injuries. *See Chow*,

---

[2] On July 14, 2021, in response to Plaintiff serving his Rule 11 Notice pointing out counsel had requested any evidence of purported consent, counsel for Defendants disclosed a spreadsheet with one row and a phone recording of one of the calls with Plaintiff.

185 F. Supp. 2d at 917 (allegations of having incurred attorneys' fees and litigation costs do not state a claim for common law fraud).

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion to Dismiss the Counterclaim and such other appropriate relief as the Court deems appropriate.

Respectfully submitted,

By: /s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Jeffrey Blake
*jeff@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180

Mark L. Javitch (admitted *pro hac vice*)
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo, California 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
*mark@javitchlawoffice.com*

*Attorneys for Plaintiff and the putative Class*