**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

MICHAEL ANTHONY, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

THE FEDERAL SAVINGS BANK, an Illinois Federal Savings Association, and NATIONAL BANCORP HOLDINGS, INC., a Delaware corporation,

Defendants.

Case No.: 1:21-cv-02509

Honorable Edmond E. Chang

**PLAINTIFF MICHAEL ANTHONY'S MOTION FOR SANCTIONS**

Plaintiff Michael Anthony ("Plaintiff") seeks sanctions against Defendants and/or their counsel under Fed. R. Civ. P. 11, the Court's inherent authority, and 28 U.S.C. § 1927, for filing a frivolous counterclaim designed solely to harass Plaintiff for asserting his rights.

## I. PROCEDURAL BACKGROUND

On May 10, 2021, Plaintiff filed his complaint against THE FEDERAL SAVINGS BANK ("FSB"), and NATIONAL BANCORP HOLDINGS, INC. ("NBC," and together with FSB, the "Defendants"), asserting that they violated the Telephone Consumer Protection Act ("TCPA") by calling him without his consent and while he was registered on the National Do Not Call Registry ("DNC Registry"). Complaint, Dkt. 1.

Plaintiff has maintained his phone number on the DNC Registry since May 2004. Compl. ¶ 3. Despite this and his strict control over the use of his phone number, Plaintiff has been receiving numerous unsolicited phone calls asking for a clearly made-up person named "Needle Dee." Compl. ¶ 30. On April 14, 2021, Plaintiff received a phone call asking for Needle Dee. To investigate the source of the unsolicited calls, Plaintiff played along. Compl. ¶¶ 35–37. He was

connected with a person named Moe and was eventually sent an email from an address @thefederalsavingsbank.com. Compl. ¶ 39. Immediately after determining the identity of FSB, Plaintiff called back and informed Moe, and his manager Matt, that he did not consent to be called and that he was on the DNC Registry. Compl. ¶¶ 40–43. Despite speaking to two FSB employees that day, he received more unsolicited phone calls the next day. Compl. ¶ 44.

On June 30, 2021, Defendants filed an answer and a counterclaim for common law fraud, asserting that Plaintiff requested the call either by submitting his phone number into a third party website form requesting mortgage rates or because of the way he requested more information during the call. Dkt. 15.

## II. RULE 11 NOTICE

Pursuant to Fed. R. Civ. P. 11(c)(2), the Rule 11 "motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged [pleading] is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). The purpose of the requirement in Rule 11(c)(2) is to compel the party seeking sanctions to "first fire a warning shot that gives the opponent time to find a safe harbor." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 882 (7th Cir. 2017).

On June 22, 2021, counsel for the Plaintiff, Thomas Zimmerman, Jr., Jeff Blake, and Mark Javitch, and counsel for Defendants, Ari Karen and Zachary Glaser, conducted a teleconference to discuss Defendants' assertion that Plaintiff consented to be called. *See* Declaration of Mark Javitch ("Javitch Decl.") ¶ 4. During the call, Defendants' counsel referenced only a recording or a transcript of one of the phone calls Defendants placed to Plaintiff, and they asserted that Plaintiff acknowledged that he was "Needle Dee." *Id*.

Counsel for Defendants did not mention that they planned to file a counterclaim. *Id*. ¶ 5. On June 23, 2021, counsel for Plaintiff emailed Ari Karen and Zachary Glaser to request to review any evidence of Plaintiff's prior consent to be called. Javitch Decl. ¶¶ 6-7. A true and correct copy of that email is attached as Exhibit "A" to the Javitch Decl. Plaintiff did not receive a response to the email in Exhibit "A". *Id*. ¶ 8. Instead, on July 2, 2021, Defendants filed their answer and counterclaim for fraud.

On July 8, 2021, Plaintiff's counsel caused a letter captioned "Notice of Commencement of Safe Harbor Period" and this Motion for Sanctions to be emailed and delivered by overnight mail to counsel for Defendants, pursuant to F.R.C.P. 11. *Id*. ¶¶ 9–10, and Exhibit "B" attached thereto.

In the Rule 11 letter, Plaintiff's counsel advised Defendants that the counterclaim was in violation of Rule 11(b)(1)-(3) in that it was (i) presented for an improper purpose, (ii) without basis in law, and (iii) contained factual contents without evidentiary basis. Plaintiff's counsel requested that the counterclaim be withdrawn, and that Defendants state their basis for asserting that Plaintiff is a serial litigant. The letter also outlined, in detail, the arguments and authorities supporting the basis for imposition of sanctions. This letter conforms to the standards required by *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 552 (7th Cir. 2011), for satisfaction of the "Safe Harbor" requirements of Rule 11.

## III. STANDARD FOR RULE 11 SANCTIONS

Rule 11(c) of the Federal Rules of Civil Procedure allows courts to impose sanctions on a party if the requirements of Rule 11(b) are not met. The district court may impose sanctions if a lawsuit is "not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *Nat'l Wrecking Co. v. Int'l Bhd. of*

*Teamsters, Local* 731, 990 F.2d 957, 963 (7th Cir. 1993). "Rule 11 does not require that the district court make a finding of bad faith. . . . Instead, the district court need only undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Id*. at 963 (citations and internal quotation marks omitted).

## IV. THE COUNTERCLAIM IS WITHOUT BASIS IN FACT

Defendants failed to make a reasonable investigation into the facts before asserting their counterclaim.

### A. Plaintiff Was Called Six Times Despite Being on the National Do Not Call Registry and Never Consenting to Be Called

Plaintiff alleges at least six violations of 47 U.S.C. § 227(c) (the Do Not Call provision) of the TCPA in April 2021. Compl. ¶ 45. Plaintiff never consented to any calls and had no prior relationship with Defendants. Compl. ¶ 46. On the contrary, Plaintiff closely guards his privacy and has had his phone number registered on the DNC Registry for the past 17 years. Compl. ¶ 27. Plaintiff registered his residential phone number ending in x555 on the DNC Registry on May 20, 2004. Compl. ¶ 29. Plaintiff rarely gives out his phone number and maintains strict control over to whom he releases it. Compl. ¶ 28. For two years, despite never using such a moniker, Plaintiff has been receiving calls to speak to someone named "Needle Dee." Compl. ¶ 30. For this period, Plaintiff has been trying to identify how he was put on a list under the name Needle Dee so he could get his phone number removed from any association with "Needle Dee." Compl. ¶¶ 30–31.

### B. Plaintiff Never Consented to Be Called

Defendants' assertion that Plaintiff consented to being called after the fact—*i.e.*, *during the call itself*—is not a claim of *prior* express invitation or permission, which the law requires. *See* 47 C.F.R. § 64.1200(c)(2)(ii). And it is not in writing, which is also required. *Id*. Plaintiff played along to identify the caller, and Plaintiff received an email identifying FSB. That same day, Plaintiff called back to inform Defendants that he did not want to be called. During the call with Moe,

Plaintiff insisted to speak to a manger until Moe transferred him to Matt O., and he later spoke to a vice president at FSB in charge of telemarketing, Maggie D.[1] Compl. ¶ 43; Anthony Decl. ¶ 7. Plaintiff expressed to all three employees that he never should have been called and that he sought to be removed from their calling lists. Defendants do not dispute Plaintiff's subsequent conversations with Defendants. Dkt. 15, ¶¶ 40–43. But even *after* personally registering his complaints with Moe and his manager at FSB, Plaintiff still received four more unwanted calls from Defendants. Compl. ¶ 44; Anthony Decl. ¶ 7.

Defendants also assert that Plaintiff visited the website www.lowermyowninterestrate.com on January 10, 2021, and entered his address and phone number, which indicated consent to contact Plaintiff's phone number to sell him mortgage refinancing services. Despite Plaintiff's attorney inquiring about such information, Defendants have not produced any records supporting this assertion. *See* Javitch Decl. ¶¶ 6-7 and Exhibit "A" attached thereto.[2] Plaintiff states that he has never heard of or visited that website. *See* Anthony Decl. ¶ 4.

Defendants also assert that Plaintiff is a "serial" TCPA filer. Dkt. 15, Counterclaim, ¶ 2. But this statement is false and irrelevant. Plaintiff has filed one other TCPA lawsuit besides this one. *See* Anthony Decl. ¶ 3. Defendants do not even mention a single other case he has filed. Defendants must immediately correct this falsehood that violates Rule 11. *Sato v. Kwasny*, No. 3-0037,1993 U.S. Dist. LEXIS 15693, 1993 WL 460842, at *3 (N.D. Ill. Nov. 5, 1993) (failure to

[1] Plaintiff has the full names of Moe, Maggie, and Matt, but there is no reason to publish their full names in this public filing.

[2] On July 14, 2021, Defendants' counsel emailed Plaintiff's counsel a purported recording of a phone call between Plaintiff and an unidentified person regarding mortgage refinancing which ends the moment the call is transferred to Moe. Defendants also provided a one-row Excel spreadsheet containing the name Needle Dee and other information Defendants claim constitutes evidence of consent. *See* Exhibits C and D attached to the Javitch Decl. These documents fail to connect Plaintiff to prior consent in any way.

make a reasonable investigation into the facts); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 1:11-cv-01108-SEB-TAB, 2015 U.S. Dist. LEXIS 108901, 2015 WL 4878644, at *27 (S.D. Ind. May 22, 2015) (failure to reasonably inquire into a "critical fact").

### C. Defendants Could Never Have Obtained Consent for the Calls Made After Plaintiff Spoke to Moe and his FSB Manager

Plaintiff alleges that Defendants called him four more times after Plaintiff spoke to an employee and a manager of Defendants to reiterate that he never should have been called in the first place. Compl. ¶ 43. Defendants cannot establish that they ever obtained Plaintiff's consent to be called, and they have absolutely no basis to believe they had consent for the four calls made to Plaintiff after he verbally reiterated that he never gave consent and was on the DNC Registry. Defendants have no explanation for how they can establish consent *after* Plaintiff spoke to two FSB employees. *See* Anthony Decl. ¶¶ 5–7.

## V. THE COUNTERCLAIM IS UNSUPPORTED IN LAW

Under Rule 11(b)(2), the district court may impose sanctions if a lawsuit is not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *National Wrecking Co.*, 990 F.2d at 963. Defendants' counterclaim for fraud is defective from the outset. *See Stoller v. Costco Wholesale Corp*., No. 19-cv-140, 2020 U.S. Dist. LEXIS 7429, 2020 WL 247459, at *24 (N.D. Ill. Jan. 16, 2020).

### A. Feigning Interest After a TCPA Violation Is Not Bad Faith

Defendants cannot elevate their unsupported assertion that Plaintiff feigned interest into bad faith. Every American who experiences an unwanted telemarketing call wants them to stop, and investigating the violation is not in bad faith. Even if Plaintiff did "feign interest" during one of the calls, this does not support a fraud claim.

Courts across the country have consistently explained that it is to be expected, and not in bad faith, that the victim must in some way engage with the caller to discover and pursue the identity of the responsible party. *See Johansen v. GVN Mich., Inc.*, 2015 U.S. Dist. LEXIS 79776, at *3-4, 2015 WL 3823036 (N.D. Ill. June 18, 2015) (Posner, J., sitting by designation). ("[T]he defendant argues that by pressing 1 the plaintiff consented to receive future Robocalls from the defendant. The plaintiff, however, alleges that he pressed 1 only to find out who was calling (and there is no evidence to the contrary) . . . . If [the plaintiff] didn't know who was calling, he wouldn't know whom to sue. His seeking the caller's identity was not tantamount to consenting to receive telephone solicitations."); *Shelton v. Nat'l Gas & Elec., LLC*, Civ. A. No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *12, 16, 2019 WL 1506378 (E.D. Pa. April 5, 2019) ("The fact that he 'play[s] along' with telemarketing scripts to 'find out who [they] really are' is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation....Plaintiff's only intentional engagement with Defendant was calling it back to "find out who [it] really [was]," which is a prerequisite to filing a lawsuit. At this stage, there is no evidence that Plaintiff is doing anything other than "pursu[ing] his rights."); *Morris v. V4V1 Vehicles for Veterans*, No. 4:15-CV-724, 2017 U.S. Dist. LEXIS 111096, at *7, 2017 WL 3034664 (E.D. Tex. July 18, 2017) ("While it is true that Plaintiff informed 'Donate That Car' that he desired to donate a vehicle, Plaintiff alleged he made such false representation to find out who was responsible for making the numerous calls to his telephone number[. This is] an insufficient basis for concluding that Plaintiff acted in bad faith."); *Sapan v. Sunrise Mgmt.*, 2016 U.S. Dist. LEXIS 56879 (C.D. Cal., Apr. 25, 2016) (granting default judgment) ("Sapan 'feigned interest in order to find out who was calling him' and was transferred to a 'Todd Stevens' of 'Sunrise Law Group.'").

Moreover, Defendants must get consent in writing for it to be effective. *See* 47 C.F.R. 64.1200(c)(2)(ii). What was said verbally over the phone will not suffice as proper consent.

**B. The Fraud Claim is Frivolous As a Matter of Law**

The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496 (1996). A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made. *Id*.; Fed. R. Civ. P. 9(b) (circumstances constituting fraud must be pled with particularity). A party generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief, except where it can show that the missing pieces are outside of its control. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442, 444 (7th Cir. 2001).

Defendants do not state with particularity any facts supporting their suspicions that "upon information and belief, Plaintiff visited the website www.lowermyowninterestrate.com on January 10, 2021" (the "who"), or what was allegedly said that conveyed an "interest in being contacted about refinancing a mortgage" (the "what"). Counterclaim ¶¶ 3, 12. According to Defendants, their vendor FDE, not Plaintiff, conveyed the information to Defendants that Defendants claim is false. Counterclaim ¶ 15. FDE could have obtained the information from anywhere, and Defendants do not provide a reasonable basis for alleging that it was Plaintiff who submitted the information into the website or explain how the information from website was transmitted to FDE. *See* Counterclaim ¶ 6 ("As a result of submitting this information and providing express written

consent to be called, FDE called the number provided"). Defendants allege only on "information and belief" that Plaintiff visited a website (Counterclaim ¶ 3), and that "Plaintiff's phone number, an email address, the name 'Needle Dee,' the address of a home in Lansdale, Pennsylvania, and information about the mortgage on that home" was entered into the website (Counterclaim ¶ 4). That information could have been entered by anybody, and Defendants have refused to provide Plaintiff's counsel any of the requested information pertaining to Defendants' assertion that Plaintiff did so. *See* Javitch Decl. ¶¶ 6–8 and Exhibit "A" attached thereto.[3]

In addition, Defendants claim in conclusory fashion that the website they allude to, www.lowermyowninterestrate.com, has "clear and unambiguous language" that submitting information is tantamount to consenting to be called, but avoid alleging the contents of the website's language (the "what"). *Id*. Counterclaim ¶ 5. Without these, the claim fails under Rule 9(b).

Also fatal to their claim is that Defendants do not actually plead reliance or causation. *See Beck v. Cantor, Fitzgerald & Co*., 621 F. Supp. 1547, 1555 (N.D. Ill. 1985). Defendants do not allege that they directly relied on the fraud, but rather that they were a "foreseeable target." Counterclaim ¶ 16. Defendants' reliance on FDE, however, was not foreseeable by anyone inputting the data into the website. Unlike in *Rozny v. Marnul*, where the court concluded that a surveyor who "kn[ew] that its plat would be used and relied on by others," could be held liable for its misstatements, no facts are alleged to suggest any computer user could have anticipated that Defendants would rely on the information allegedly input into the web form. *See* 43 Ill.2d 54, 67 (1969). Defendants do not argue that Plaintiff caused them to change their behavior. *See Doctor's Data*, 2011 U.S. Dist. LEXIS 134921, 2011 WL 5903508, at *37 ("[A] common law fraud claim

---

[3] As noted above, Defendants supplied an Excel spreadsheet, but it fails to connect to Plaintiff.

requires actual reliance which means that the misrepresentations must reach the plaintiff who must reasonably rely on them… In this case, Doctor's Data alleges no reliance of their own and their fraud claim must be dismissed.") (citation omitted).

In fact, Defendants admit that Plaintiff informed Defendants on April 14, 2021 that he was not Needle Dee and that his number was on the DNC Registry. Dkt. 15 (admitting allegations in Compl. ¶ 41). But the calls continued, even after Plaintiff told two employees of FSB to stop calling and that he never consented to be called. Compl. ¶ 44. Defendants' fraud claim cannot be premised on the calls placed to Plaintiff after Plaintiff informed them he was not Needle Dee. Because this lawsuit is independently actionable for these subsequent calls and Defendants' only claimed injury is being named as defendants in this lawsuit, Defendants have failed to allege that any purported fraud caused their injury. And if Defendants have documentation showing Plaintiff gave prior written consent to be called, Plaintiff's counsel asked for it but have not received it. So, the ongoing litigation would be the result of Defendants' own failures. Having no reasonable basis at law, Defendants' assertion of this fraud counterclaim is sanctionable. *See Butler v. FDIC*, No. 11 CV 6692, 2014 U.S. Dist. LEXIS 27682, 2014 WL 843605, at *10 (N.D. Ill. Feb. 28, 2014) (granting sanctions for pursuing claims that were barred).

Finally, Defendants' unquestioning belief that a person named "Needle Dee" was interested in mortgage refinancing was unreasonable. Any reasonably prudent person would notice that was a fake name, or at least suspect as much and investigate further. Therefore, any reliance on a web submission through FDE and perhaps other unidentified intermediaries which Defendants refused to show Plaintiff, is entirely unreasonable. Counterclaim, at ¶ 4. *See DaimlerChrysler Servs. N. Am., LLC v. N. Chi. Mktg.*, No. 02 C 5633, 2003 U.S. Dist. LEXIS 25147, at *8-9 (N.D. Ill., Feb. 7, 2003) (dismissing fraud claim because plaintiff fails to show

reasonable reliance as a matter of law when simply reading the documents would reveal the supposed fraud).

## VI. THE COUNTERCLAIM WAS FILED FOR AN IMPROPER PURPOSE

A motion, pleading, or other document may not be interposed for purposes of delay, harassment, or increasing the costs of litigation. Fed. R. Civ. P. 11.

The fraud counterclaim could only have been filed for an improper purpose. Defendants are experienced litigators and know and understand the elements of common law fraud, but they do not even attempt to satisfy the standard. *See Royce v. Michael R. Needle, P.C*., 158 F. Supp. 3d 708, 2016 WL 393147, at *4 (N.D. Ill. 2016) (the defendants "could not have advanced the counterclaim consistently with Rule 11(b)(2). Only a determined indifference to the legal merits of the case serves to explain their conduct."). As experienced litigators, Defendants' counsel should have known that their position was groundless. *See CUNA Mut. Ins. Soc'y v. Office of Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560–61 (7th Cir. 2006).

Defendants accuse Plaintiff of fraud for the sole purpose of intimidating Plaintiff into dropping his meritorious lawsuit. The parties conducted a teleconference where counsel for Plaintiff requested any records showing Plaintiff's purported consent to be called. *See* Javitch Decl. ¶ 4. The next day, counsel for Plaintiff emailed again requesting any evidence to support Defendants' allegations of Plaintiff's consent prior to the calls, but counsel for Defendants did not respond.[4] *Id*. ¶¶ 6–8 and Exhibit "A" attached thereto. Instead, they filed a frivolous counterclaim which relies on "information and belief" for allegations they are required to have substantiated

[4] Defendants ultimately did respond on July 14, 2021, albeit insufficiently, after this motion was served on Defendants on July 8, 2021.

prior to making the telemarketing phone calls to Plaintiff, and even more so, prior to making allegations of fraud in federal court.

## VII. THE COURT SHOULD ALTERNATIVELY SANCTION DEFENDANTS UNDER ITS INHERENT AUTHORITY OR 28 U.S.C. § 1927

A court may also invoke its inherent powers to sanction litigants even where procedural rules exist that would sanction the same conduct. *Methode Elecs., Inc. v. Adam Techs., Inc*., 371 F.3d 923, 927 (7th Cir. 2004). Sanctions may be imposed "if the court finds that the party acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. (internal citation omitted). Further, 28 U.S.C. § 1927 provides: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 authorizes sanctions against an attorney who has engaged in a "serious and studied disregard for the orderly process of justice." *Badillo v. Central Steel & Wire Co*., 717 F.2d 1160, 1166 (7th Cir. 1983) (citations and internal quotation marks omitted).

For the same reasons explained above, Plaintiff requests that the Court sanction Defendants under its inherent authority or pursuant to Section 1927.

## VIII. CONCLUSION

For the foregoing reasons, the Court should impose sanctions under Rule 11, the Court's inherent authority, and/or 28 U.S.C. § 1927, and for such other appropriate relief as the Court deems appropriate.

MICHAEL ANTHONY, individually, and on behalf of all others similarly situated,

By: /s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*

Jeffrey Blake
*jeff@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180

Mark L. Javitch (admitted *pro hac vice*)
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo, California 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
*mark@javitchlawoffice.com*

*Attorneys for Plaintiff and the putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2021, I emailed and mailed via USPS Overnight Mail tracking number 9270190175547700001976148 the foregoing Motion for Sanctions and the Notice of Commencement of Safe Harbor Period to counsel for Defendants:

Mr. Zachary Glaser
Mr. Ari Karen
Offit Kurman
Ten Penn Center
1801 Market Street
Suite 2300
Philadelphia, PA 19103
akaren@offitkurman.com
zglaser@offitkurman.com

Dated: August 3, 2021 /s/ Mark L. Javitch.