**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL ANTHONY, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>THE FEDERAL SAVINGS BANK, an Illinois Federal Savings Association, and NATIONAL BANCORP HOLDINGS, INC., a Delaware corporation, and FDE MARKETING GROUP LLC, a Florida limited liability company,<br><br>      Defendants. | Case No.: 1:21-cv-2509<br><br>Jury Trial Demanded |

# **FIRST AMENDED CLASS ACTION COMPLAINT**

1.  Plaintiff MICHAEL ANTHONY ("Plaintiff") brings this Class Action Complaint against Defendants THE FEDERAL SAVINGS BANK ("FSB"), NATIONAL BANCORP HOLDINGS, INC. ("NBH"), and FDE MARKETING GROUP LLC ("FDE") (collectively, "Defendants") to enjoin their unlawful practice of making telemarketing phone calls to residential phone numbers registered on the National Do Not Call Registry without their permission, and to obtain redress for all persons injured by Defendants' conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

2.  FSB is a Federal Savings Association that provides traditional banking services and also sells residential mortgages. NBH wholly owns FSB. As a part of their marketing of residential

mortgages, Defendants repeatedly called consumers' telephones nationwide who had registered their phone numbers on the National Do Not Call Registry, including to Plaintiff and the Class.

3. FDE is a company hired by FSB and NBH to place telemarketing calls to consumers soliciting FSB and NBH's mortgage refinancing and other financial services and products, and to transfer live phone calls to FSB and NBH's representatives to attempt to complete the telemarketing pitch to the consumers to whom Defendants have placed phone calls.

4. Defendants did not obtain written express consent prior to placing calls to people on the National Do Not Call Registry and, therefore, violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; 47 C.F.R. § 64.1200(c)(2)(ii).

5. Congress enacted the TCPA in 1991 to restrict telemarketing that could target millions of consumers *en masse*.

6. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

7. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants spamming consumers who have specifically followed the procedure authorized by statute and established by the FCC to put their phone numbers on the list of people who have formally requested to stop receiving telemarketing phone calls.

8. Section 227(c) directs the Federal Communications Commission to formulate regulations to protect telephone subscribers' privacy rights and authorizes the establishment of a national database to compile the numbers of telephone subscribers who object to receiving telephone solicitations. 47 U.S.C. § 227(c)(2)–(3).

9. The regulations promulgated under § 227(c) prohibit the initiation of any telephone solicitation to a telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c).

10. In addition, persons or entities initiating telephone solicitations must have "instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." *Id*. § 64.1200(d).

11. Section 227(c)(5) establishes a private right of action for a person who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of these regulations.

12. By placing the calls at issue in this case, Defendants violated the privacy and statutory rights of Plaintiff and the Class.

13. Plaintiff therefore seeks an injunction under § 227(c)(5) requiring Defendants to stop their unconsented calling, as well as an award of actual and statutory damages to Plaintiff and the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

14. Plaintiff is a natural person and is a citizen of Pennsylvania.

15. FSB is a Federally Chartered Savings Association with its principal place of business located at 300 North Elizabeth Street, Floor 3E, Chicago, Illinois 60607.

16. NBH is a Delaware corporation with its principal place of business located at 300 North Elizabeth Street, Floor 3E, Chicago, Illinois 60607.

17. FSB is wholly owned by NBH.

18. FDE is a Florida limited liability company. Its membership, and therefore, its citizenship (*see Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007)) is unknown to Plaintiff at this time.

19. Among other lines of business, Defendants sell residential loans and mortgages by placing telemarketing phone calls to consumers' phone numbers.

## JURISDICTION AND VENUE

20. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute.

21. This Court has personal jurisdiction over Defendants because Defendants' principal place of business is located in this District.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

## COMMON FACTUAL ALLEGATIONS

23. Defendants sell residential mortgages and related financial products and services.

24. Upon information and belief, to increase sales and avoid paying for legitimate forms of advertising, Defendants amassed a list of individuals who they determined might be potential customers for mortgage refinancing.

25. Upon information and belief, Defendants obtained this list of homeowners from sources other than Plaintiff and the Class members and without the knowledge, permission, or prior express consent of Plaintiff and the Class members.

26. Defendants failed to check whether the people they were calling had registered on the National Do Not Call Registry.

27. Upon information and belief, Defendants called thousands of residential phone numbers on their list, including to Plaintiff's and Class members' telephones, despite those people having been registered on the National Do Not Call Registry.

28. Defendants called them and solicited them for residential mortgages despite the notice they gave by registering their phone number pursuant to the TCPA that they did not want

4

to be called. Defendants not only ignored their federal registration but completely failed to obtain any permission whatsoever prior to calling.

## FACTS SPECIFIC TO PLAINTIFF

29. Plaintiff closely guards his privacy and has had his phone number registered on the National Do Not Call Registry for the past 17 years.

30. Plaintiff rarely gives out his phone number and maintains strict control over to whom he releases it.

31. Plaintiff registered his residential phone number ending in x555 on the National Do Not Call Registry on May 20, 2004.

32. Despite his efforts, however, for approximately the last two years, Plaintiff has been receiving numerous unsolicited calls to his phone asking for someone named "Needle Dee."

33. Plaintiff was particularly bothered by this because he never went by the name "Needle Dee" or anything closely resembling that name. Therefore, Plaintiff has been trying to find out how his phone number was identified with that name and get his phone number disassociated with "Needle Dee."

34. In April, 2021, Plaintiff received three unsolicited calls from Defendants purporting to be seeking to talk to "Needle Dee."

35. On April 6, 2021 at 5:22 p.m., Plaintiff received a call on his phone number ending in x555 from a number identified by Plaintiff's caller ID as 833-362-4786.

36. On April 14, 2021, at 2:30 p.m., interrupting Plaintiff while he was trying to talk to an auto repair shop about his car, Plaintiff received another phone call on his phone number ending in x555 from the same caller ID, 833-362-4786.

37. When Plaintiff answered the call, a voice asked for "Needle Dee."

5

38. Having no other way to identify the source of the unsolicited and recurring calls for "Needle Dee," Plaintiff feigned interest in order to identify the caller and enforce his rights under the TCPA, which rights had already accrued by the time the phone call was placed.

39. Plaintiff was connected with a person representing his first name as "Moe," a mortgage broker with FSB.

40. Moe solicited Plaintiff on the phone for Defendants' residential mortgage products.

41. At 4:35 p.m., while he was still on the phone with Moe, Plaintiff received an email from Moe with a last initial A., who had an email address @thefederalsavingsbank.com.

42. Immediately after determining the identity of the company responsible for the call, Plaintiff called Moe back to inform FSB to cease calling his phone number ending in x555. However, Plaintiff received Moe's voicemail.

43. Moe called Plaintiff back, at which time Plaintiff explained that his phone number was registered on the Do Not Call Registry, that he was not Needle Dee, and that despite this, he had received numerous unwanted calls to this phone number from or on behalf of FSB seeking to speak to Needle Dee.

44. Plaintiff asked Moe how his phone number was obtained. Moe explained that his company, FSB, hired numerous third-party companies, one of them called "FDE," to generate calls and transfer them to Defendants. Moe stated that FSB pays these companies per lead transferred.

45. Plaintiff also spoke to Moe's manager at FSB, Matt O., and another executive, Maggie D., and also told them that he should never have been called and that he was seeking to be removed from all of their lists and not be contacted again.

6

46. Notwithstanding the foregoing, on April 15, 2021, Plaintiff received four more calls on his phone number ending in x555 from the same number identified by Plaintiff's caller ID as 833-362-4786.

47. In total, Plaintiff received at least six unsolicited calls from Defendants.

48. Plaintiff never consented to receive calls from Defendants. Plaintiff had no prior relationship with Defendants.

49. Defendants' calls violated Plaintiff's statutory rights and caused actual and statutory damages. Additionally, the unlawful calls caused annoyance, intrusion on Plaintiff's privacy and seclusion, and wasted Plaintiff's time.

50. After commencing this litigation against Defendants FSB and NBH, FSB and NBH asserted allegations and claims that FDE was the entity that placed all of the phone calls to Plaintiff.

51. Plaintiff undertook significant efforts to issue subpoenas for documents and depositions from FDE and its principal, Frank Bisesi ("Bisesi"). As of the filing of this amended complaint, Plaintiff has obtained an order from the United States District Court for the Southern District of Florida ordering FDE to comply with Plaintiff's subpoena for documents, which has been duly served on FDE. FDE continues to blatantly disregard the Court Order. In addition, FDE's principal, Bisesi, continues to evade service of subpoenas attempted to be served on him at numerous addresses informally, by process server, and by certified mail. Plaintiff has not successfully served Bisesi as of the filing of the amended complaint.

## CLASS ALLEGATIONS

52. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and 23(b)(3) on behalf of himself and a Class defined as follows:

> All persons within the United States registered on the National Do Not Call Registry for at least 30 days, who had not granted Defendants prior express written consent nor had a prior established business relationship with

> Defendants, whose phone numbers were called more than one time by one or more Defendant, or on one or more Defendant's behalf, where the phone calls were to promote one or more Defendant's products or services, within any twelve-month period, in any twelve-month period ending within four years of the filing of this lawsuit.

53. In addition, Plaintiff seeks certification pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) the following Subclass:

> All persons within the United States registered on the National Do Not Call Registry for at least 30 days, who had not granted Defendants prior express written consent nor had a prior established business relationship with Defendants, whose phone numbers were called more than one time by FDE, on FSB's or NBH's behalf, where the phone calls were to promote one or more of Defendant's products or services, within any twelve-month period, in any twelve-month period ending within four years of the filing of this lawsuit.

54. Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class or Subclass; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

55. **Numerosity**: The exact number of the Class and Subclass members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. Based on the representation that Defendants have hired numerous companies, including FDE, to simultaneously generate leads for Defendants' financial services products on behalf of Defendants, it is believed that Defendants placed telephone calls to thousands of consumers. Furthermore, FSB boasts

funding $6 billion worth of home loans in 2019 alone.[1] Members of the Class and Subclass can be identified through Defendants' records.

56. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class and Subclass, in that Plaintiff and the Class and Subclass members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

57. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class and Subclass. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and Subclass and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class and Subclass. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass and have the financial resources to do so.

58. **Policies Generally Applicable to the Class**: The Class and Subclass are appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class and Subclass as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and Subclass members and making final injunctive relief appropriate with respect to the Class and Subclass as a whole. Defendants' practices challenged herein apply to and affect the Class and Subclass members uniformly, and Plaintiff's challenge to those practices hinge on Defendants' conduct with respect to the Class and Subclass as a whole, not on facts or law applicable only to Plaintiff.

---

[1] https://www.thefederalsavingsbank.com/ (last visited May 5, 2021).

59. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include, but are not necessarily limited to the following:

  a. Whether Defendants violated the TCPA;

  b. Whether the calls were made by or on behalf of Defendants;

  c. Whether the calls promoted or advertised Defendants' products and services;

  d. Whether Defendants obtained prior express written consent to make the calls;

  e. Whether members of the Class and Subclass are entitled to damages based on Defendants' violations of the TCPA, and whether they are entitled to enhanced damages under the TCPA for Defendants' knowing and/or willful violation of the TCPA.

60. **Superiority**: The Class and Subclass are also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class and Subclass will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class and Subclass to obtain effective relief from Defendants' misconduct. Even if members of the Class and Subclass could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal

and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## CAUSE OF ACTION
### Violation of 47 U.S.C. § 227(c)
(*on behalf of the Class and Subclass against all Defendants*)

61. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62. Plaintiff registered his phone number ending in x555 on the National Do Not Call Registry on May 20, 2004, and it has remained listed on the National Do Not Call Registry at all times since.

63. Defendants and/or their agents acting with Defendants' knowledge and on their behalf, placed telephone calls to Plaintiff and the Class and Subclass members' Do Not Call-registered telephone numbers without having their prior express written consent to do so.

64. The foregoing acts and omissions of Defendants and/or their agents constitute violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

65. Defendants' calls were made for a commercial purpose and encouraged the purchase or rental of, or investment in, property, goods, or services.

66. Plaintiff and the Class and Subclass members are entitled to an award of at least $500 in statutory damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

67. Defendants made the TCPA-violating calls willfully and knowingly. Therefore, Plaintiff and the Class and Subclass members are entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5)(C).

68. Plaintiff and the Class and Subclass members also seek a permanent injunction prohibiting Defendants and their agents from making telemarketing solicitations to residential telephone numbers listed on the National Do Not Call Registry, and an injunction requiring Defendants to stop their unlawful calling campaign.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MICHAEL ANTHONY, individually and on behalf of the Class and Subclass, prays for the following relief:

    A.    An order certifying the Class and Subclass as defined above, appointing Plaintiff as the representative of the Class and Subclass, and appointing his counsel as counsel for the Class and Subclass;

    B.    An order declaring that Defendants' actions, as set out above, violate the TCPA;

    C.    An order declaring that Defendants' actions, as set out above, violate the TCPA willfully and knowingly;

    D.    An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' express written consent to receive such calls, and otherwise protecting interests of the Class and Subclass;

    E.    An award of actual damages and/or statutory and enhanced damages;

    F.    An award of reasonable attorneys' fees and costs; and

    G.    Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

        MICHAEL ANTHONY, individually, and on behalf of all others similarly situated,

        By: /s/ Thomas A. Zimmerman, Jr.
            Thomas A. Zimmerman, Jr. (IL #6231944)
            *tom@attorneyzim.com*
            Jeffrey D. Blake
            *jeff@attorneyzim.com*
            ZIMMERMAN LAW OFFICES, P.C.
            77 W. Washington Street, Suite 1220
            Chicago, Illinois 60602
            Telephone: (312) 440-0020
            Facsimile: (312) 440-4180
            *www.attorneyzim.com*

            Mark L. Javitch (admitted *pro hac vice*)
            *mark@javitchlawoffice.com*
            Javitch Law Office
            480 S. Ellsworth Avenue
            San Mateo, California 94401
            Telephone: (650) 781-8000
            Facsimile: (650) 648-0705

        Attorneys for Plaintiff and the putative Class and Subclass