**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL ANTHONY, ) | |
| ) | |
| Plaintiff, ) | No. 1:21-CV-02509 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| THE FEDERAL SAVINGS BANK, ) | |
| NATIONAL BANCORP HOLDINGS, INC., ) | |
| and FDE MARKETING GROUP LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Michael Anthony brought this proposed class action against, as pertinent here, The Federal Savings Bank and National Bancorp Holdings, Inc., alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227; 47 C.F.R. § 64.1200(c)(2)(ii). R. 1, Compl. ¶ 3; R. 51, Am. Compl. ¶ 4.[1] (For convenience's sake those two Defendants are referred to collectively as the Bank.) In response, the Bank brought a counterclaim against Anthony, alleging that he committed common law fraud. R 15, Def.'s Counterclaim. The Bank alleges that Anthony intentionally submitted a false name, along with his phone number, on the website www.lowermyowninterestrate.com with the intent to manufacture this lawsuit. *Id.* ¶¶ 3–4, 13.

---

[1] Federal district courts have federal-question jurisdiction of suits brought under the TCPA's private right of action. *Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 372 (2012). With the federal law claim in the case, the Court has supplemental jurisdiction over the state law counterclaim under 28 U.S.C. § 1367(a). Citations to the record are noted as "R." followed by the docket number.

Anthony now brings a motion to dismiss the Bank's counterclaim, arguing that the Bank has not alleged any injury or damages to support the claim; the allegations fail to satisfy the particularity-pleading standard of Federal Rule of Civil Procedure 9(b); and the counterclaim insufficiently alleges that the Bank ever relied on the purported misrepresentation. R. 20, Pl.'s Br. at 4, 7, 9. In conjunction with the dismissal motion, Anthony also moves for sanctions against the Bank under Federal Rule of Civil Procedure 11(c) and 28 U.S.C. § 1927, arguing that the counterclaim is without a basis in fact or law. R. 22, Pl.'s Mot. Sanctions at 4, 6. For the reasons discussed in this Opinion, the motion to dismiss is granted in part and denied in part, while the motion for sanctions is denied in part and terminated without prejudice in part.

## I. Background

In considering the motion to dismiss, the Bank's factual allegations must be accepted as true, and reasonable inferences drawn in its favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). The Bank sells residential loans and mortgages. Am. Compl. ¶ 19. Anthony alleges that the Bank engages in an unlawful practice of making telemarketing phone calls to consumers registered on the National Do Not Call Registry. *Id.* ¶ 1. Anthony also alleges that the Bank did not obtain written express consent before calling consumers, in violation of the Telephone Consumer Protection Act. *Id.* ¶ 4.

Anthony alleges that he placed his phone number (ending in x555) on the National Do Not Call Registry back in 2004. Am. Compl. ¶ 31. According to Anthony (the Bank disputes this), despite his best efforts to maintain his privacy, over the last two

years Anthony began receiving unsolicited phone calls asking for someone named "Needle Dee." *Id.* ¶ 32. The Bank believes otherwise: according to the Bank, Anthony visited www.lowermyowninterestrate.com on January 10, 2021. Def.'s Counterclaim ¶ 3. On this site, there is a section for visitors to enter their information, and the Bank alleges that it was *Anthony* who entered his "phone number, an email address, the name 'Needle Dee,' the address of a home in Lansdale, Pennsylvania, and information about the mortgage on that home." *Id.* ¶ 4. The Bank goes on to say that the online page provides "clear and unambiguous language explaining that by clicking on the button to 'submit' information, the user is providing express written consent to … being called even if the user's telephone number is currently listed on any state or federal Do-Not Call list." *Id.* ¶ 5. FDE Marketing Group (the most recently added Defendant in the case) is a vendor that provides customer-contact leads to the Bank. *Id.* ¶ 7. The Bank now claims that in order to manufacture this lawsuit, Anthony made false representations about his name and his interest in receiving calls in the hopes of snaring a telemarketer to call him. *Id.* ¶¶ 12–13.

In contrast, Anthony asserts that he has never gone by the name "Needle Dee" or, indeed, anything close to resembling that name. Am. Compl. ¶ 33. Anthony alleges that he received phone calls on April 6, 2021, and then again on April 14, 2021, from the number (833) 362-4786, in which the caller asked for "Needle Dee." *Id.* ¶ 35–37. To find out who was calling, in one of the calls on April 14, Anthony "feigned interest in order to identify the caller and enforce his rights under the TCPA." *Id.* ¶ 38. While on the call, Anthony was connected to Moe, a mortgage broker with the Bank. *Id.*

3

¶ 39. Moe solicited Anthony for the Bank's residential mortgage products; while on the phone call, Anthony received an email from Moe, who had an email address ending in "@federalsavingsbank.com." *Id.* ¶ 40–41. Once Anthony had identified the company behind the call, Anthony called Moe back and left him a voicemail instructing the Bank to stop calling his number ending in x555. *Id.* ¶ 42.

Moe called Anthony back and, this time around, Anthony explained that "his phone number was registered on the Do Not Call Registry, that he was not Needle Dee, and … he had received numerous unwanted calls to this phone from or on behalf of FSB seeking to speak to Needle Dee." *Id.* ¶ 43. Anthony asked Moe how his phone number had been obtained; Moe responded that the Bank hired third-party companies, such as FDE, to "generate calls and transfer them to Defendants." *Id.* ¶ 44. Anthony also spoke to Moe's managers at the Bank, Matt. O and Maggie D. *Id.* ¶ 45. Anthony told them that "he should never have been called and that he was seeking to be removed from all of their lists and not be contacted again." *Id.* ¶ 45. Despite that instruction, the Bank called Anthony (at the x555 number) four more times on April 15, 2021; the Bank again called from the 833-362-4786 number. *Id.* ¶ 46.

It is worth noting that, as the litigation progressed, Anthony filed an Amended Complaint and the Bank's responsive pleading did not expressly reassert the counterclaim. R. 57, Defs.' Answer and Affirmative Defenses. But in a March 4, 2022, status report, the parties say that Anthony has "two motions that remain pending (a motion to dismiss TFSB's counterclaim, and a motion for sanctions)." R. 71 at 1. So

4

the counterclaim appears to be a still-operative pleading despite its absence in the answer to the Amended Complaint.

## II. Standard of Review

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the ICFA. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits*

*Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Thus, Rule 9(b) requires that [party]'s complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up). Put differently, her complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (cleaned up).

### III. Analysis

Before digging into the dismissal motion, it is important to note that at issue is just that—a dismissal motion. So the analysis of the motion is confined to the allegations set forth in the Bank's counterclaim. This is worth noting because the motion for sanctions was contemporaneously briefed (something the Court often disallows and, as the discussion later shows, should have disallowed this time around too). With the contemporaneous briefing came a bevy of additional asserted facts, under-oath declarations, and records—all of which are external to the counterclaim and none of which can be considered in assessing the counterclaim.

### A. Motion to Dismiss

The Bank's counterclaim for common law fraud stems from the allegation that Anthony entered false information into the www.lowermyowninterestrate.com site, purporting to provide apparent consent to be called under the name "Needle Dee" with the intent to manufacture this lawsuit. Counterclaim ¶¶ 3–4, 13. Anthony

6

moves to dismiss the counterclaim, arguing that the Bank lacks standing, the allegations of fraud lack specificity, and the allegations of reliance, causation, and damages fail as a matter of law. R. 20, Pl.'s Br. at 1.

At the outset, before discussing each of those four arguments, it is worth explaining that, at the most, the Bank's fraud claim can be premised only on the *first two* calls made by the Bank (or its vendor) to Anthony. Under Illinois law, common law fraud requires (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance on the truth of the statement; and (5) the plaintiff's damages resulting from the reliance on the statement. *Massuda v. Panda Express, Inc.*, 759 F.3d 779, 783 (7th Cir. 2014).

Anthony is correct that the Bank's fraud claim cannot apply to the four phone calls that the Bank made *after* Anthony made clear that he was not Needle Dee and that he did not want to be contacted by the Bank. Pl.'s Br. at 5. At that point, the Bank knew Anthony's name was not Needle Dee, so there was no false statement (that is, it is true that Anthony's name is not Needle Dee) on which the Bank could rely. What's more, before the final four calls were made, Anthony had told the Bank not to call him. Am. Compl. ¶¶ 45–46. Again, the Bank could not rely on the purported consent that Anthony (acting as Needle Dee, in the Bank's version of events) had given to receive phone calls. So the analysis will proceed solely on whether the Bank has adequately alleged a fraud claim as to the first two phone calls, that is, on April

7

6, 2021, at 5:22 p.m., and April 14, 2021, at 2:30 p.m. Am. Compl. ¶¶ 35–36.[2] With the table set as to the first two phone calls, the Court turns to the rest of the arguments.

### 1. Standing

First, on standing, according to Anthony, the Bank cannot show any injuries in fact that are traceable to Anthony's alleged portrayal as "Needle Dee." Pl.'s Br. at 5. But the Bank has properly pleaded standing, namely, its vendor (with whom it presumably had a contract) and its employee (Moe) spent time and effort calling Anthony (and then soliciting Anthony) because he allegedly gave the Bank consent to receive marketing calls. Counterclaim ¶ 11–16; R. 25, Defs.' Resp. at 6. Employee time and effort can qualify as an injury in fact. *See Roboserve, Inc. v. Katao Kagaku Co., Ltd.*, 78 F.3d 266, 274 (7th Cir. 1996) (explaining that damages was appropriate for the wasted time and effort expended by employees in preparing proposals and negotiations).

Beyond that, the Bank's time and costs in defending this lawsuit also qualify as an injury in fact. If Anthony really did complete the online form to bait the Bank into calling and to manufacture this litigation, then the resources that go into defending the lawsuit is as concrete an injury as being deprived of money. Anthony relies

---

[2]Anthony did also say, during the second phone call (on April 14, 2021), that he was Needle Dee in order to figure out who was calling and why. Although the parties debate whether that would qualify as a fraudulent statement, there is no need to decide that issue, because the Bank suffered no damages out of that particular (and fleeting) statement. As explained later in this Opinion, the Bank's potential damages arise out of the expenditure of time and effort to call Anthony the first two times.

on *Chow v. Aegis Mortgage Corporation* for the proposition that litigation costs do not by themselves establish standing. Pl'.s Br. at 9–10 (citing *Chow v. Aegis Mortg. Corp.*, 185 F. Supp. 2d 914, 917–18 (N.D. Ill. 2002) ("Aegis offers no legal authority that its allegations of having incurred attorneys fees and litigation costs satisfy the injury element required for common law fraud in Illinois, and I hold that they do not. Attorney's fees and costs do not appear to be even available to a prevailing party under common law fraud …"). But *Chow* is distinguishable. *Chow* involved a fraud claim asserted by a bank alleging that a borrower had paid a kickback to a bank employee for favorable terms. *Id.* at 916. But the borrower, the bank conceded, had paid off the loan in full, so the district court held that there were no damages (and no injury in fact). *Id.* at 916–17. So *Chow* does not present similar facts at all.

It is true that, in the context of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*, the Seventh Circuit has held that simply hiring an attorney to obtain legal advice to deal with an unfair debt-collection practice is not necessarily enough to qualify as an injury in fact. *See e.g.*, *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068–69 (7th Cir. 2020). There might be limits to that disqualification. *See Deiker v. TrueAccord Corp.*, 2021 WL 4502138, at *3 (N.D. Ill. 2021) (explaining that a misled and reasonably confused debtor who actually pays an attorney to address a collection practice might satisfy an injury in fact). In any event, the Bank is alleging a different kind of harm: it was baited (again, on its version of the facts) into calling Anthony in order to fraudulently manufacture a lawsuit, which in turn naturally required the expenditure of resources in defending. That is a concrete harm

9

well beyond asking a lawyer for advice in order to affirmatively bring a claim against a debt-collection practice.

### 2. Rule 9(b)

Anthony next argues that the counterclaim is not pleaded with the particularity required by Civil Rule 9(b). Pl.'s Br. at 7; Fed. R. Civ. P. 9(b). To be sure, the scheme alleged by the Bank is of almost Moriarty-like proportions (referring to the mastermind villain eventually taken down by Sherlock Holmes). In the Bank's telling of things, in January 2021, Anthony visited the lowermyowninterestrate website and entered the false name but real phone number, all in an effort to lure the phone call from the Bank. Counterclaim ¶¶ 3–4. It sounds bizarre, but as far as Rule 9(b) goes, the specific facts are pleaded. The Bank gives the date of the fraudulent statement (January 10, 2021), the specific content of the false statements (fake name and fake consent to receive a phone call), what the Bank did in response (make the phone calls via its vendor), and what the Bank employee talked about with Anthony. Counterclaim ¶¶ 3–10. The specifics are all there.

Time will tell—or more precisely, discovery will tell—whether the Bank can gather enough evidence to prove this fraud scheme. The actual facts might be an obstacle to proving the claim, but the heightened pleading standard has been satisfied.

### 3. Reliance / Causation

Anthony's third argument is that the fraud claim fails for lack of reliance and, relatedly, lack of causation. Pl.'s Br. at 8–9. Specifically, Anthony contends that the Bank did not plead reliance or causation based on the allegedly false entry on the

10

lowermyowninterestrate.com website. *Id.* Anthony goes on to specify that there are no allegations suggesting that the person who entered the contact information on the website would have anticipated that the Bank would rely on that information. *Id.* The name "Needle Dee," according to Anthony, is a name which a reasonably prudent person would perceive as a fake name or at least raise a reasonable person's suspicions. *Id.* at 9.

Again, however, at this stage of the litigation, the Bank's allegations must be accepted as true. The Bank explicitly alleges that its vendor called the number in reliance on the entered information, and that the Bank's employee too spoke with Anthony in reliance on the information. Counterclaim ¶¶ 6, 8–9. The Bank alleges, with specificity, that the website contained clear language explaining that clicking "submit" constituted express written consent to be called. *Id.* ¶ 5. There is nothing unreasonable, as alleged, about that reliance by the Bank. Nor is the name "Needle Dee" so odd that anyone reading it would think that it was a fake name and that the consent thus must be fake. Reliance and causation are adequately pleaded.

### 4. Damages

Fourth and finally, Anthony argues that the counterclaim fails for inadequately alleging damages. Again, as explained in the discussion of standing, *supra* at § III(A)(1), if this tale of fraud and a manufactured lawsuit is true, then the Bank suffered damages both in the form of the monetary value of the Bank's employee time in talking with Anthony and soliciting him for a mortgage product and in the form of the resources in defending the manufactured lawsuit. This element is adequately

alleged. All in all, then, the fraud counterclaim adequately states a claim at the pleading stage.

### B. Motion for Sanctions

As noted earlier, Anthony also filed a contemporaneous motion for sanctions, arguing that the counterclaim had no basis in fact or law. Pl.'s Mot. for Sanctions at 4, 6. Under Civil Rule 11(c), sanctions may be imposed on a party for "making arguments or filing claims that are frivolous, legally unreasonable, without foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (defining "frivolous argument or claim" as "one that is baseless and made without a reasonable and competent inquiry."). "Federal Rule of Civil Procedure 11 seeks to ensure that [the] powers and machinery [of litigation] are engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose." *Northern Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883–84 (7th Cir. 2017). The Court also has authority to impose sanctions against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously," 28 U.S.C. § 1927.

On whether there was a reasonable basis in *fact* for the claim, now is not the right time to decide the issue, because not all the facts are known (at least not at the time of the briefing). As the Advisory Committee Note explains, "it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined *at the end of the litigation* …" Fed. R. Civ. P. 11, Adv. Cte. Note (1983 Amendment) (emphasis added). The parties' sanctions briefing reflects this running battle

12

of the facts, with the Bank submitting declarations in its response and Anthony submitting records of his own in his reply brief (to which the Bank has not had a chance to respond to, given that the records are in Anthony's reply). *See* R. 25, Defs.' Resp. at 3 (referencing a June 22, 2021 call between the parties); *see* R. 30, Pl.'s Reply at 2–3 (referencing the Jornaya software). After the summary judgment stage, Anthony can consider renewing the motion on this particular basis, that is, the lack of a *factual* basis. Only at that point will the facts be fleshed out, as well as the Bank's diligence in investigating the facts before filing the counterclaim. Indeed, an evidentiary hearing might be necessary depending on how the facts develop and the need to make credibility determinations. The upshot is that the motion is premature as to the factual basis for the counterclaim. The motion is terminated without prejudice as to that aspect.[3]

With regard to a reasonable basis in law, because the counterclaim has survived the motion to dismiss, at this point the claim cannot be deemed to be frivolous. So the motion is denied as to the argument that there was no reasonable basis in law for the fraud claim.

---

[3]As the parties continue to progress in discovery, both sides should be constantly evaluating the solidity of their factual positions and (as to the Bank) whether they conducted sufficient pre-pleading investigation. This evaluation should go hand-in-hand with continued assessment of settlement positions as the risk, delay, and expense of this litigation continues to mount. The parties are fortunate to have the expert guidance of the excellent magistrate judge assigned to this case, so seeking that judge's help in resolving the litigation should be a constant thought.

## IV. Conclusion

Anthony's motion to dismiss is granted in part (as to the final four phone calls) and denied in part (as to the first two calls). The motion for sanctions is denied in part and terminated without prejudice in part.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2022