IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ANTHONY, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>THE FEDERAL SAVINGS BANK, an Illinois Federal Savings Association, and NATIONAL BANCORP HOLDINGS, INC., a Delaware corporation, and FDE MARKETING GROUP LLC, a Florida limited liability company,<br><br>    Defendants. | Case No.:  1:21-cv-2509<br><br>District Judge LaShonda A. Hunt<br><br>Magistrate Judge Gabriel A. Fuentes |

## JOINT STATUS REPORT

Pursuant to the Order of October 31, 2025 (ECF No. 189), Plaintiff Michael Anthony ("Plaintiff") and Defendants The Federal Savings Bank ("TFSB") and National Bancorp Holdings, Inc. ("Defendants") (collectively, the "Parties"), submit this joint status report.

## I. PENDING MOTIONS

On November 7, 2025, Defendants filed a Petition for Permission to Appeal with the clerk of the United States Court of Appeals for the Seventh Circuit. ECF 193. The Petition for Permission to Appeal is pending with the Seventh Circuit. The Parties have the following positions on how to proceed in the meantime.

## II. PLAINTIFF'S POSITION

### A. Limited Discovery Into Defendant's Financial Status Is Appropriate

Discovery into Defendants' financial ability to pay a classwide judgment is warranted. On September 26, 2025, Plaintiffs served two notices of deposition (one to each Defendant) to depose

a corporate representative on matters relating to Defendants' assets, liabilities, net worth, and ability to pay a classwide judgment. Defendants stated they would not be producing witnesses for the depositions. The Parties met and conferred regarding the depositions, and Defendants' counsel stated they would confer with their clients regarding which, if any, of the requested information they would be willing to provide to Plaintiff. Plaintiff has not received that response as of the filing of this status report. Should the Parties be unable to agree on the scope of Plaintiff's requested discovery, Plaintiff would bring the discovery dispute to the Court to resolve.

Plaintiff believes that given the strength of Plaintiff's class case on the merits, if the Parties were to engage in settlement discussions, any settlement discussions must account for Defendants' ability to pay. *See Green v. Monarch Recovery Mgmt., Inc.*, 997 F. Supp. 2d 932, 935 (S.D. Ind. 2014) (net worth "information is relevant to have meaningful settlement negotiations").

Moreover, a party's net worth is discoverable where punitive damages are at issue. *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, No. 15 CV 9323, 2021 WL 229655, at *2 (N.D. Ill. Jan. 22, 2021). Here, Plaintiff requests statutory damages of up to $1,500 for each violation for Defendants' willful and knowing conduct. *See Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 880 (N.D. Ill. 2024) (granting summary judgment to plaintiff on liability and willfulness under 47 U.S.C. § 227(c)(5) where defendant's subagent "deliberately placed [calls] to Hossfeld's phone number").

Finally, Defendants' net worth is also relevant to any due process concerns Defendants may seek to raise in the future. *See United States v. Swartz*, 145 F.4th 727, 733 (7th Cir. 2025). In their Petition for Permission to Appeal that they filed in the Seventh Circuit on November 7, 2025 (App. Case No. 25-8030), Defendants raised the argument that this is a "bet-your-company case," and a classwide judgment "could jeopardize a federally insured bank" and would be the "death

knell" for Defendants, which warrants immediate appellate review of the class certification ruling. *See* pp. 3, 19 in Defendants' Petition for Permission to Appeal. By making this argument, Defendants put their net worth squarely at issue.

Plaintiff requests 45 days to complete such discovery.

### B. Defendants' Discovery Regarding Plaintiff's Expert Is Unwarranted

Defendants raise an issue with Plaintiff's expert, Aaron Woolfson's, use of certain data administered by iConectiv on behalf of the FCC relating to the status of phone numbers as wireless/wireline and the carrier of record. Defendants' proposal to issue numerous third-party subpoenas regarding this issue is unnecessary and unduly burdensome on these third parties. Plaintiff recommends that iConectiv be given advanced notice and an opportunity to state its position if it desires to do so, prior to service of the anticipated subpoenas to carriers. If iConectiv provides a response, then the Parties can address the issue in light of iConectiv's stated position.

### C. Defendants' Request to Reopen Merits Discovery Should Be Denied or Limited

Defendants reference certain anticipated discovery into issues of vicarious liability, consent, and standing. Defendants state they intend to serve subpoenas on the two lead vendors who supplied leads to FDE Marketing Group, LLC ("FDE"). Discovery has already been completed on these issues prior to the merits fact discovery deadline of September 23, 2022 (ECF Nos. 70, 75, 83, 85, 87). Discovery on these merits fact issues should remain closed. Defendants recognized that fact discovery was closed. *See* ECF No. 97 ¶ 7 ("On November 4, 2022, following the conclusion of fact discovery…"). On October 26, 2022, Plaintiff filed a motion for class certification based on the state of the record that was developed through that discovery.

1. Plaintiff served interrogatories and document requests to the Defendants requesting that they articulate and support any claims of consent for Plaintiff and Class

members. Defendants had no documents.

    a.    Interrogatory Nos. 4, 8, and 9 ask Defendants to describe consent records and processes for obtaining consent. As of their latest supplemental response, Defendants responded that they do not maintain consent records. *See* Defendants' Third Suppl. Responses to Plaintiff's First Set of Discovery, attached hereto as <u>Exhibit A</u>.

    b.    In a second set of document requests to Defendants, attached hereto as <u>Exhibit B</u>, Plaintiff requested "All lists of contact information supplied by Joseph D'Alonzo and Diagroup LLC containing phone numbers called for outbound telemarketing purposes." *See* Document Request No. 30, <u>Exhibit B</u>. Defendants answered that they are not in possession of any responsive documents. *See* Defendants' Response to Document Request No. 30, <u>Exhibit B</u>.

2.    Plaintiff issued subpoenas and then (once named as a defendant) discovery requests to FDE regarding consent.

    a.    FDE produced a single excel file "New50KVARefiLeads" in response to Plaintiff's subpoena request for lead lists.

    b.    Thereafter, Plaintiff requested from FDE "All lists of contact information supplied by Joseph D'Alonzo and Diagroup LLC containing phone numbers [FDE] called for outbound telemarketing purposes." *See* FDE's Responses to Plaintiff's Second Request for Production, No. 30, attached as <u>Exhibit C</u>. FDE responded: "Defendant objects to this request as a duplicative and burdensome because it calls for documents already

        produced to Plaintiff. Documents already produced will not be produced again." *See* FDE's Response to Document Request No. 30, <u>Exhibit C</u>.

   c.    Plaintiff requested "Documents and communications relating to all leads, data, and contact information provided to [FDE] by Leadservices.com and other vendors providing contact information for calls placed by [FDE]." *See* Document Request No. 39, <u>Exhibit C</u>. FDE responded: "Defendant objects to this request as the same is overbroad and unduly burdensome. Documents that do not relate to this matter are not proportionate to the needs of this case. The foregoing objection notwithstanding, Defendant has no responsive documents in its possession, custody, or control." *See* FDE's Response to Document Request No. 39, <u>Exhibit C</u>.

   d.    Plaintiff requested "Invoices and receipts for lists of data, leads, and contact information for [FDE's] data vendors, including DiaGroup LLC, Leadservices.com, and other vendors providing such information for calls placed by [FDE]." *See* Document Request No. 40, <u>Exhibit C</u>. FDE responded: "Defendant objects to this request as the same is overbroad and unduly burdensome. Documents that do not relate to this matter are not proportionate to the needs of this case. The foregoing objection notwithstanding, Defendant does not have any invoices from Diagroup LLC or Leadservices.com." *See* FDE's Response to Document Request No. 40, <u>Exhibit C</u>.

3.    Plaintiff issued a Subpoena to DiaGroup, LLC, requesting documents relating to consent or permission to place telephone calls, and websites where any alleged

consent information is obtained. DiaGroup responded and claimed it had no responsive documents. *See* DiaGroup's Response to Subpoena Nos.12–14, attached hereto as Exhibit D.

4. Plaintiff issued two Subpoenas to Lead Intelligence, Inc. d/b/a Jornaya for the TCPA Guardian Report relating to Plaintiff's alleged opt in, and a random sample of 20 other LeadiDs listed on the excel file "New50KVARefiLeads" produced by FDE. As Plaintiff shows in his Motion for Class Certification (ECF No. 128), at Exhibit D, none of the LeadiDs sampled provided valid consent. Defendants did not dispute this.

In summary, Plaintiff already completed the discovery Defendants now propose to conduct again. And the fact that the district judge was open to allowing additional discovery on certain issues does not mean it is appropriate to reopen discovery that has already been conducted. Defendants also had ample opportunity to develop consent evidence when discovery was open for all purposes but did not do so. Pursuant to Fed. R. Civ. P. 26(a) and (e), Defendants were required to produce this information earlier if they had it. Plaintiff reserves all rights under the Federal Rules, and principles of waiver, laches, and any other basis for excluding any new evidence Defendants obtain regarding consent, if any. Plaintiff does not anticipate the need for any additional experts at this time. However, if Defendants obtain new consent evidence, additional expert evidence might be needed to address it.

### D. Proposed Plan for Identifying and Notifying Class Members

Defendants did not maintain records sufficient to identify Class members. The Ytel CDRs list only phone numbers. Plaintiff's expert has proposed a process to issue subpoenas to the phone carriers servicing the phone numbers to obtain identifying information of Class members. Once

the carriers respond to the subpoenas, then a Court approved notice provider can develop a plan for obtaining further information where necessary and a plan for sending notice to the Class members in accordance with the Federal Rules and due process for the Court to consider.

Plaintiff proposes an initial period of 6 months from the date of the issuance of the carrier subpoenas to collect responsive information. Then, the notice provider will have an opportunity to review the responses and propose next steps, including whether follow up discovery is needed or whether a notice plan can be developed and presented for the Court's approval.

However, to avoid costly duplicative or needless efforts, Plaintiff proposes that the carrier subpoenas and notice plan take place only after any discovery that the Court determines is appropriate. Any new evidence may include contact information of Class members and, therefore, may change the Parties' options and recommendations for how identification of Class members and notice ought to be conducted.

## III. DEFENDANTS' POSITION

### A. The Court Already Established that Defendants Are Entitled to Conduct Merits Discovery

This Court has already explicitly granted Defendants' request to move forward with merits discovery. *See* Defendants' Exhibit A, Oct. 30, 2025 Tr. of Telephonic Proceedings, at 8:24-25, 9:1 ("But it certainly seems that there is a basis for allowing defendants to move forward with that merits discovery, and so I will grant that."). The Court recognized that it would be prejudicial to Defendants to preclude further merits discovery, even though there is some clear overlap between the class discovery and merits discovery (*Id.* at 8:6-12). The Court also reasoned that the Court had already bifurcated the discovery, contemplating that there was individual claims discovery and discovery related to class certification, and that there would be a period of merits discovery thereafter. *Id.* at 5:19-25, 6:1. In fact, the Court specifically stated that "there could be a period of

7

merits discovery after class certification was decided" (*Id*. at 6:1-3) and that there was a need for further merits discovery (*Id*. at 9:11-13). Plaintiff's position that Defendants are not entitled to conduct merits discovery is directly contrary to the Court's ruling.

Defendants maintain that discovery is required on the merits of the class claims, to identify the class, and to resolve current disputes between the Parties. Importantly, the Court noted at the October 30, 2025, status conference that issues likely to be raised on the merits after certification would be questions of consent, agency, vicarious liability, and ratification. *Id*. at 6:7-13. Defendants may also seek limited discovery directed to absent class members on the issue of whether a phone number is business or residential.

            i. <u>Discovery Regarding Woolfson's Unauthorized Use of iConectiv Data (90 days)</u>

As an initial matter, based upon the evidence received and as set forth more fully in Defendants' Motion for Reconsideration (ECF No. 177), Defendants contend that Aaron Woolfson's use of iConectiv's NPAC Data violates the permitted uses established and approved by the FCC. Hence, Woolfson's entire plan for identifying and notifying class members appears to be flawed. Moreover, it appears Woolfson did not comply with the extent and completeness of his disclosure obligations under FRCP Rule 26. . Defendants believe it is imperative that discovery on this issue be completed prior to Plaintiff issuing any subpoenas to phone carriers, as such subpoenas may be predicated on Woolfson's misuse of data for purposes for which it was not designed or intended to serve.

Discovery on this issue will include subpoenas for documents and depositions for third-parties (iConectiv and Tel-Lingua), as well as of TelSwitch, Woolfson's company, including a deposition limited to these matters. The Court further noted at the October 30 status conference that it remained unanswered if Woolfson had fully disclosed all of the data he relied upon in

8

reaching his conclusions, and that there might be an obligation for Plaintiff to supplement the information pursuant to Rule26(e). *See* Exhibit A at 13:6-17. The Court even noted that if supplementation is warranted, then the door would potentially reopen with respect to the admissibility of Woolfson's report, testimony, and his opinions. (*Id*. at 14:1-5). Accordingly, Defendants maintain that further discovery is warranted on this issue. Defendants anticipate discovery on the iConectiv issue will take approximately ninety (90) days to complete. Defendants also request that this Court set an affirmative deadline for Plaintiff to supplement Woolfson's report, should they feel it is required. *See Id*. at 14:1-16.

      ii.   Discovery Regarding Consent, Vicarious Liability, Standing, Business or Residential Phone Line (9 months)

Following resolution of the issues concerning Woolfson's use of iConectiv data and the admissibility of his testimony, and given the class size and complexity of the issues in this case, TFSB contends that discovery—including the issuance of subpoenas to carriers, identification of class members, and concerning the merits of the class claims—will take approximately nine (9) months. This discovery may include issues related to discovery on class member consent, vicarious liability, standing and/or whether a proposed class member phone was used for business or residential purposes. Additionally, TFSB may seek limited absent class member discovery on the issue of whether a phone number is business or residential. Following the conclusion of discovery, TFSB anticipates filing a dispositive motion and/or a motion to decertify the class.

**B. Discovery Into Defendant's Finances is Premature and Unnecessary**

Defendants further submit that the investigation into Defendants' finances is premature as Plaintiff has not made a "prima facie showing that it is entitled to punitive damages." See *E.E.O.C. v. Maha Prabhu, Inc*., No. 3:07-CV-111-RJC-DCK, 2008 WL 4126681, at *4 (W.D.N.C. July 18, 2008); *Briggs v. PNC Financial Services Group, Inc*., No. 15 C 10447, 2016 WL 401701 at *2

9

(N.D. Ill. Jan. 20, 2016) (court granted plaintiffs' protective order, exercising its "broad discretion in managing discovery in general and collective actions in particular" where plaintiffs argued depositions sought were premature at conditional certification stage (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)); *See* also *E.E.O.C. v. Flour Federal Global Projects, Inc.*, No. 6:22-CV-1960-HMH-KFM, 2023 WL 8114796 at *1 (D.S.C. May 26, 2023) (30(b)(6) deposition was premature as to topics regarding disclosure of financial information concerning net worth where plaintiff had not yet established entitlement to punitive damages) (citing *Maha Prabhu, Inc*. at *4 (discussing production of sensitive financial information is not required until the plaintiff establishes the viability of a claim for punitive damages)). Furthermore, as entity regulated by the Office of the Comptroller of the Currency ("OCC"), the vast majority of financial information concerning TFSB, including some of the information sought by Plaintiff is publicly available, making the proposed discovery entirely unnecessary. Plaintiff's assertion that the statute may afford entitlement to punitive damages is unavailing absent any finding of liability, and this discovery should not be permitted at this stage in the litigation. In all events, Plaintiff already has access to substantial information concerning TFSB's financials as the Bank is federally insured and required to provide information publicly available online from the Office of the Comptroller of the Currency.

| | |
|---|---|
| Michael Anthony, individually, and on behalf of all others similarly situated, | The Federal Savings Bank and National Bancorp Holdings, Inc., |
| By: /s/ Thomas A. Zimmerman, Jr. | By: /s/ V. Amanda Witts |
| Thomas A. Zimmerman, Jr. (IL #6231944) *tom@attorneyzim.com* Jeffrey D. Blake *jeff@attorneyzim.com* Zimmerman Law Offices, P.C. | |

77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
*www.attorneyzim.com*

Mark L. Javitch (admitted *pro hac vice*)
*mark@javitchlawoffice.com*
Javitch Law Office
480 S. Ellsworth Avenue
San Mateo, California 94401
Telephone: (650) 781-8000

Class Counsel

Steven M. Hartmann (IL #6185428)
*shartmann@sgrlaw.com*
Smith, Gambrell & Russell, LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606-6677
Telephone: (312) 360-6000

V. Amanda Witts (admitted *pro hac vice*)
*v.awitts@mitchellsandler.com*
Ari Karen (*pro hac vice* forthcoming)
*akaren@mitchellsandler.com*
Sean Hennessy (*pro hac vice* forthcoming)
*shennessy@mitchellsandler.com*
Mitchell Sandler PLLC
2020 K Street NW, Suite 760
Washington, DC 20006
Telephone: (202) 886-5260

Attorneys for Defendants The Federal Savings Bank and National Bancorp Holdings, Inc.